## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA Division

REW AVIATION,LLC, a Kansas Limited
Liability Company and POLLOCK
LEASING, LLC, a Kansas Limited                    **CASE NO.**
Liability Company,

      Plaintiffs,                                    **COMPLAINT**

v.

A1 PALLETS, LLC, a Florida Limited
Liability Company and TIMOTHY HENLEY,
individually,                                      **JURY TRIAL DEMANDED**

      Defendant,
_____/

      Plaintiffs REW AVIATION, LLC and POLLOCK LEASING, LLC by their attorneys, sue

A1 PALLETS, LLC and TIMOTHY HENLEY and allege as follows:

### NATURE OF THE CASE

      1.     This is an action for breach of contract, conversion, civil theft, and other claims

seeking damages, attorneys' fees and costs in excess of $75,000.

### JURISDICTION AND VENUE

      2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)

because this is a civil action wherein the matter in controversy exceeds the sum or value of

$75,000.00, exclusive of interest and costs and punitive damage claims, and is between citizens

of different states, i.e. both Plaintiffs and its members are citizens of Kansas and Defendants

1

including the members of A1 Pallets, LLC are citizens of Florida. Therefore, this Court has subject matter jurisdiction based on complete diversity of citizenship of the parties. 28 U.S.C § 1332(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants are present in the Middle District of Florida and the events giving rise to Plaintiffs' claims occurred in this District.

## IDENTIFICATION OF PARTIES AND JURISDICTION

4.      Plaintiff, Rew Aviation, LLC ("Rew"), is and was at all times, a Kansas Limited Liability Company with its principal place of business in Lenexa, Kansas and its owner and member is a resident of the State of Kansas. Therefore Rew is a citizen of the State of Kansas for purposes of diversity of citizenship.

5.      Plaintiff, Pollock Leasing LLC ("Pollock"), is and was at all times, a Kansas Limited Liability Company with its principal place of business in Lenexa, Kansas and its owner and member is a resident of the State of Kansas. Therefore Pollock is a citizen of the State of Kansas for purposes of diversity of citizenship.

6.      Defendant, A1 Pallets LLC ("A1"), is and was at all times, a Florida Limited Liability Company with its principal place of business in Temple Terrace, Florida and its owner and member, Timothy Henley is a resident of the State of Florida. Therefore A1 is a citizen of the State of Florida for purposes of diversity of citizenship.

7.      Defendant Timothy Henley ("Henley") is an individual who was at all times a resident of the State of Florida and was at all times the President and owner of A-1.

2

## **FACTUAL ALLEGATIONS**

8.      On February 1, 2020, Rew as seller and A1 and Henley as buyer entered into an agreement (the "Agreement") for the purchase and sale of commercial property located at 6007 North 54th Street, Tampa, FL 33610 (the "Property").  A true and correct of the Agreement, as amended, is attached as Exhibit A hereto and incorporated herein by reference.

9.      The April 23, 2020 addendum (Addendum #1) to the Agreement specifically excluded the silo ("Silo") located on the Property from the transaction and allowed Rew 30 days following the cessation of "Covid-19 events" to remove the Silo.

10.      Addendum #1 defined "Covid-19 events" as:

Circumstances relating to the coronavirus/COVID-19 pandemic, including *but not limited to*, local/state/national emergency orders, including shelter in place orders, travel restrictions, lodging restrictions, construction moratoriums, labor or material shortages, *or internal corporate policies* relating to the foregoing.

(Emphasis added). As such, in light of the ongoing pandemic and related restrictions, Rew still has the right to remove the Silo.

11.      On July 21, 2020, counsel for Rew emailed Henley to advise him of the COVID-related issues that were precluding Rew from being able to remove the silo.

12.      Henley responded that Rew could no longer remove the Silo, and that A1 intends to retain control of it and sell it.

13.      On August 11, 2020, counsel for Rew again wrote to Henley advising him that Rew still has a corporate policy in place that restricts travel thus, again, invoking the application of the above definition of "Covid-19 events" and that, accordingly, Rew had not violated the time period within which it could remove the Silo.  Counsel for Rew also advised Henley that despite the

ongoing pandemic and logistical difficulties, Rew had arranged for a third-party crane operator to come to the Property on August 26, 2020 to retrieve the Silo.  Henley refused to release the Silo.

14.     On August 20, 2020, counsel for Pollock spoke to Henley and informed him that Pollock was the actual owner of the Silo and that Rew was responsible for retrieving it from the Property as set forth in Addendum #1 but that, in any event, the Silo did not belong to Henley and he was obligated to turn it over.

15.     On that same day, counsel for Pollock corresponded with Henley to confirm Pollock's ownership of the Silo in writing but Henley failed to respond or otherwise agree to allow Pollock to retrieve the Silo.

## FIRST CLAIM FOR RELIEF

Breach of Contract

(Rew Against and A1 and Henley)

16.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 15 and further allege as follows:

17.     Rew on the one hand and A1 and Henley on the other hand were parties to the Agreement including Addendum #1.

18.     In reliance on Defendants' promises that they would perform their obligations under the Agreement, Rew delivered possession of the Property and transferred title thereof to A1 and Henley.

19.     Rew fully performed its obligations under the Agreement.

4

20.     Defendants breached their obligations under the Agreement, specifically Addendum #1 thereto, by failing to turn over the Silo and refusing to allow Rew to enter the Property to retrieve the Silo despite numerous demands by both Rew and Pollock.

21.     As a result of A1's and Henley's breach, Rew has suffered economic damages in an amount in excess of $75,000 including but not limited to the value of the Silo, the attorneys' fees and costs it has and will incur to enforce its rights under the Agreement, and lost profits sustained as a direct and proximate result of Defendants' breach.

## SECOND CLAIM FOR RELIEF

Civil Theft by False Promise (Fla. Stat. §772.11)

(Rew and Pollock against A1 and Henley)

22.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 15 and further allege as follows:

23.     A1 and Henley misappropriated the Silo belonging to Rew and Pollock with felonious intent to either temporarily or permanently deprive Rew and Pollock of the right to the Silo in violation of Fla. Stat §772.11.

24.     As a result, Rew and Pollock have been damaged and have lost the use, benefit and possession of the Silo.

25.     Prior to filing this action, Plaintiffs served Henley individually and as the agent of A1 with a written demand for payment of three times the amount owed, which together totaled $225,000.

26.     Neither A1 nor Henley responded to the letter or paid any portion of the treble damage amount.

27.     As a direct and proximate result of A1's and Henley's actions, Rew and Pollock have suffered damages.

## THIRD CLAIM FOR RELIEF

Conversion

(Rew and Pollock against A1 and Henley)

28.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 15 and further allege as follows:

29.     Defendants' unauthorized acts of refusing to turn over the Silo to Rew or Pollock and refusing to allow Rew or Pollock to enter the Property to retrieve the Silo despite multiple demands made by Rew and Pollock has deprived Plaintiffs of the Silo permanently or for an indefinite time.

30.     The deprivation of the Silo by A1 and Henley is inconsistent with Plaintiffs' ownership interest in the Silo.

31.     To date, A1 and Henley continue to assume authority and control over Rew's and Pollock's possessory rights to, and interests in, the Silo.

32.     As a direct result of A1's and Henley's actions and inactions as set forth herein, Rew and Pollock have been damaged.

33.     Rew and Pollock reserve the right to plead and prove punitive damages pursuant to Fla. Stat. §768.72.

/ / /

 / / /

## FOURTH CLAIM FOR RELIEF

Violation of Florida Stat. §501.201et, Seq Regulation of Trade, Commerce, Section 501 et Seq.

Florida Deceptive and Unfair Trade Practices Act

(Rew and Pollock against A1 and Henley)

34.     Plaintiff 's incorporates by reference Paragraphs 1 thru 15 and further alledges as follows:

35.     It is Plaintiffs' belief that the Defendants had no intention of releasing the said Silo and fully intended to convert the Silo to their own use.

36.     Additionally, Defendants deceptively and/or fraudulently manipulated the Covid pandemic restriction for their own benefit knowing full well of the restrictions in place.

37.     Defendants have communicated to Plaintiffs that:  (1) they are not allowed on the property to remove the Silo; (2) that they are now the owners of the Silo; and (3) that they intend to removed and sell the Silo.

38.     Such deceptive and fraudulent actions has caused the loss and/or conversion of the Silo.

39.     By reason of the foregoing, Plaintiffs have suffered and continues to suffer damages in a sum which is, as yet, unascertained.  Plaintiffs will ask leave of court to amend the Complaint when the true nature and extent of damages have been ascertained.

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.  As to the Breach of Contract Claim: an award of damages, court costs, attorney's fees, prejudgment interest and such other equitable relief as the Court deems fit and proper;

B.  As to the Civil Theft Claim: separate judgments against A1 and Henley for treble damages, together with court costs, attorney's fees and prejudgment interest pursuant to Fla. Stat. § 772.11, and such other relief as is just and proper.

C.  As to the Conversion Claim: an award of damages, court costs, attorney's fees, pre-judgment interest, punitive damages once Plaintiffs have made the requisite showing pursuant to § 768.72, and such other equitable relief as this court deems just and proper;

D.  As to the Florida Deceptive and Unfair Trade Practice Act claim: an award of damages, court costs, attorney's fees, pre-judgment interest, punitive damages once Plaintiffs have made the requisite showing pursuant to § 768.72, and such other injunctive and equitable relief as this court deems just and proper;

E.  Any other and further relief as this court would deem necessary and proper.

Plaintiff demands a trial by jury for all claims so triable.

Respectfully submitted this 5th day of October, 2020,


By Attorneys for Plaintiffs:          **LITVAK LAW GROUP, P.C.**

By: */s/ Uri Litvak*

URI LITVAK, ESQ.
FBN: 85723
WAYNE MINEO, ESQ.
FBN: 51179
2753 State Road 580, Suite 206
Clearwater, Florida  33761-3345
Main Number :  (727) 712-8883
Primary E-Mails:
ulitvak@litvaklawgroup.com
wmineo@litvaklawgroup.com

# EXHIBIT A

dotloop signature verification: dtlp.us/DgiF-mWPV-qEJ2

dotloop signature verification: c    :tl5n Aght:

CENTURY 21
Beggins Enterprises

Ɏ ꞏ ꞏ ꞏ Realtors

## Commercial Contract

1    **1. PARTIES AND PROPERTY:** <u>A1 Pallets, LLC /HENLEY, TIMOTHY</u> _____ ("**Buyer**")

2    agrees to buy and <u>REW AVIATION L L C</u> _____ ("**Seller**")

3    agrees to sell the property at:

4    Street Address: <u>6007 North 54th Street, Tampa, FL 33610</u>

5    _____

6    Legal Description: <u>GOLDEN RING GROVES THAT PART OF LOT 14 DESC AS BEG 25 FT S AND 353 FT W OF NE COR OF</u>

7    <u>SW 1/4 SEC 34 28 19 AND RUN W 254 FT S 175 FT E 254 FT AND N 175 FT TO BEG BLOCK 5</u>

8    and the following Personal Property: _____

9    _____

10    (all collectively referred to as the "Property") on the terms and conditions set forth below.

11    **2. PURCHASE PRICE:**    $ 695,000.00

12    (a) Deposit held in escrow by: <u>Fidelity National Title, HWhitacre@fnf.com,</u>   $ 10,000.00

13    ("**Escrow Agent**") (checks are subject to actual and final collection)

14    Escrow Agent's address: _____ Phone: (727) 543-8966, (813) 225-7777.

15    (b) Additional deposit to be made to Escrow Agent

16    ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or

17    ☐within ____ days after Effective Date _____ $ _____

18    (c) Additional deposit to be made to Escrow Agent

19    ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or

20    ☐within ____ days after Effective Date   $ _____

21    (d) Total financing (see Paragraph 5) _____ $ _____

22    (e) Other _____ $ _____

23    (f) All deposits will be credited to the purchase price at closing.

24    Balance to close, subject to adjustments and prorations, to be paid

25    via wire transfer.   $ 685,000.00

26    For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of

27    Buyer's written notice of acceptability.

28    **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**

29    and **Buyer** and an executed copy delivered to all parties on or before <u>02/06/2020</u>, this offer

30    will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be

31    3 days from the date the counter offer is delivered. The "**Effective Date**" of this Contract is the date on which the

32    **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer** or

33    _____. Calendar days will be used when computing time periods, except time periods of 5

34    days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal

35    holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next

36    business day. **Time is of the essence in this Contract.**

37    **4. CLOSING DATE AND LOCATION:**

38    (a) Closing Date: This transaction will be closed ~~on 04/02/2020~~ on or before 04/24/2020 _____ (Closing Date), unless

39    specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods

40    including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer ( _____ ) ( _____ ) and Seller ( _____ ) ( _____ ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-5   Rev. 9/17             ©2017 Florida Realtors®

dotloop signature verification: dlip.us/DgjF-mWP7-qEjZ

dotloop signature verification: t louison-CC33f-m-4gas

91  **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92  an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93  **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94  of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95  **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
96  ("Curative Period"). **Seller** shall use good faith efforts to cure the defects. If the defects are cured within the
97  Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98  scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99  cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100  from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101  title subject to existing defects and close the transaction without reduction in purchase price.

102  **(c) Survey:** (check applicable provisions below)
103      (i.) ☑ **Seller** will, within 3_____ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104      plans, specifications, and engineering documents, if any, and the following documents relevant to this
105      transaction:
106      _____ ,
107      prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108      transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109      date this Contract is terminated.
110      ☑ **Buyer** will, at ☐ **Seller's** ☑ **Buyer's** expense and within the time period allowed to deliver and examine
111      title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112      encroachments on the Property or that the improvements encroach on the lands of another, ☐ **Buyer** will
113      accept the Property with existing encroachments ☑ such encroachments will constitute a title defect to be
114      cured within the Curative Period.

115  **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116  **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117  ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118  makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119  changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120  refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121  condition existing as of the end of Due Diligence period, the cost of which is not to exceed $_____ (1.5% of
122  the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123  defects in the Property. (Check **(a)** or **(b)**)

124  ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125  condition.

126  ☑ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within 30_____ days from Effective Date ("Due
127  Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128  term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129  **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130  environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131  regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132  state and regional growth management and comprehensive land use plans; availability of permits, government
133  approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134  water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135  **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136  is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137  its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138  Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139  notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140  the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141  losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142  liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer**
143  will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144  **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the



Buyer [____] ([____]) and Seller [____] ([____]) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

CC-5   Rev. 9/17                                                                                    ©2017 Florida Realtors®

dotloop signature verification: dtlp.us/D2jF-mWPV-qEfZ

dotloop signature verification: d

**17. DISCLOSURES:**

**(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer.** Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer.**

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer.** Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☑ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller.** Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) Seller's Broker: Colliers _____ Jan Boltres _____,
(Company Name) (Licensee)

_____,
(Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☑ is a transaction broker ☐ has no brokerage relationship and who will be compensated_ by ☑ Seller ☐ Buyer ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

(b) Buyer's Broker: C21 List with Beggins _____ Michael Moriarty _____,
(Company Name) (Licensee)

_____,
(Address, Telephone, Fax, E-mail)

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5   Rev. 9/17   ©2017 Florida Realtors®

dotloop signature verification: dtlp.us/DgiF-rWzJPv-qEjZ

dotloop signature verification: [illegible]

348 **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350 **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351 **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357 to do so.

358 _A1 Pallets, LLC / HENLEY, TIMOTHY_   [dotloop verified 02/13/20 4:58 PM EST AKH9-VLDB-7IGX-A1AB]   Date: _____
   (Signature of Buyer

359 <u>A1 Pallets, LLC /HENLEY, TIMOTHY</u>_____   Tax ID No.: _____
   (Typed or Printed Name of Buyer)

360 Title: _____   Telephone: _____

361 _____   Date: _____
   (Signature of Buyer

362 _____   Tax ID No.: _____
   (Typed or Printed Name of Buyer)

363 Title: _____   Telephone: _____

364 Buyer's Address for purpose of notice _____

365 Facsimile: _____   Email: **info@a1palletstampa.com**

366 _____   Date: _____
   (Signature of Seller)

367 <u>REW AVIATION L L C /</u>_____   Tax ID No.: _____
   (Typed or Printed Name of Seller)

368 Title: _____   Telephone: _____

369 _____   Date: _____
   (Signature of Seller)

370 _____   Tax ID No.: _____
   (Typed or Printed Name of Seller)

371 Title: _____   Telephone: _____

372 Seller's Address for purpose of notice: _____

373 Facsimile: _____   Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific
transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by
the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which
may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of
Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or

Buyer (____ [TH] / [initials] ____) and Seller (____ [initials] / [initials] ____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5   Rev. 9/17   ©2017 Florida Realtors®

**Addendum to Contract**



Addendum No. ___1___ to the Contract with the Effective Date of __February 1, 2020__ between

_____ REW AVIATION L L C _____ (Seller)

and _____ A1 Pallets, LLC/ HENLEY, TIMOTHY _____ (Buyer)

concerning the property described as: __6077 North 54th Street, Tampa, FL 33610__

_____

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

Seller owns a silo that is located on the Property. Pursuant to Section 23 of the Contract, the silo is excluded from the purchase and sale transaction. It was Seller's intention to remove the silo prior to closing, but the COVID-19 Events (as defined below) prevent the Seller from removing the silo prior to closing. Buyer and Seller agree that Seller will have until the date that is the later of (1) 90 days following the Closing Date or (2) 30 days following the cessation of the COVID-19 Events, to remove the silo. If Seller does not remove the silo by such date, then the silo will become Buyer's property and Buyer may take any action desired by Buyer with regard to the silo, including destruction of the same.

Buyer agrees that Seller will have the right to reasonable access to the Property for the purpose of removing the silo after the Closing Date, including but not limited to the right to have personnel and equipment access the Property.

"COVID-19 Events" are defined as circumstances relating to the coronavirus/COVID-19 pandemic, including but not limited to, local/state/national emergency orders including shelter in place orders, travel restrictions, lodging, restrictions, construction moratoriums, labor or material shortages or internal corporate policies relating to the foregoing. Other capitalized terms used herein and not defined will have the same meaning as used in the Contract.

Buyer: _A1 Pallets, LLC / HENLEY, TIMOTHY_ [dotloop verified 04/23/20 3:41 PM EDT CHXZ-G0W3-AGTH-ZIAW]   Date: ____04/23/2020____

Buyer: _____   Date: _____

Seller: _____   Date: _____

Seller: _____   Date: _____

ACSP-4   Rev 6/17
Serial#: 080429-100158-7500718

©2017 Florida Realtors®
Form
Simplicity

**Addendum to Contract**



Addendum No. ___1___ to the Contract with the Effective Date of ___February 1, 2020___ between

_____ REW AVIATION L L C _____ (Seller)

and _____ A1 Pallets, LLC/ HENLEY, TIMOTHY _____ (Buyer)

concerning the property described as: 6077 North 54th Street, Tampa, FL 33610 _____

_____

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

Seller owns a silo that is located on the Property. Pursuant to Section 23 of the Contract, the silo is excluded from the purchase and sale transaction. It was Seller's intention to remove the silo prior to closing, but the COVID-19 Events (as defined below) prevent the Seller from removing the silo prior to closing. Buyer and Seller agree that Seller will have until the date that is the later of (1) 90 days following the Closing Date or (2) 30 days following the cessation of the COVID-19 Events, to remove the silo. If Seller does not remove the silo by such date, then the silo will become Buyer's property and Buyer may take any action desired by Buyer with regard to the silo, including destruction of the same.

Buyer agrees that Seller will have the right to reasonable access to the Property for the purpose of removing the silo after the Closing Date, including but not limited to the right to have personnel and equipment access the Property.

"COVID-19 Events" are defined as circumstances relating to the coronavirus/COVID-19 pandemic, including but not limited to, local/state/national emergency orders including shelter in place orders, travel restrictions, lodging, restrictions, construction moratoriums, labor or material shortages or internal corporate policies relating to the foregoing. Other capitalized terms used herein and not defined will have the same meaning as used in the Contract.

Buyer: _____    Date: _____

Buyer: _____    Date: _____

Seller: _____ 22~ _____ (MEMBER)    Date: ___4-23-20___

Seller: _____    Date: _____

ACSP-4   Rev 6/17                                                                                                ©2017 Florida Realtors®
Serial#: 080429-100158-7500718